UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL D., an Individual,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>Defendant. | Case No.: 2:19-08002 ADS<br><br><br>MEMORANDUM OPINION AND ORDER |

**I.     INTRODUCTION**

Plaintiff Darrell D.[1] ("Plaintiff") challenges Defendant Andrew M. Saul, Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of his application for a period of disability and disability insurance benefits ("DIB"). Plaintiff contends that the Administrative Law Judge ("ALJ") improperly rejected his

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

testimony regarding his pain and functional limitations.  For the reasons stated below, the decision of the Commissioner is affirmed, and this matter is dismissed with prejudice.

## II.  FACTS RELEVANT TO THE APPEAL

Plaintiff testified that he has a bachelor's degree in business management and that he has not worked since 2013.  (Administrative Record "AR" 32).  Evidence in the record also documents that Plaintiff's last reported income to be for the year 2013.  (AR 186).  Plaintiff worked as a writer of technical manuals, in many different fields, for a period of twenty-five years.  (AR 44).  Plaintiff stated that he stopped working in 2013 because he had completed the manual he was hired to write and thus his contract had ended.  (AR 32, 34).  Plaintiff testified that he would have sought another writing project but that he hurt himself building a fence, which injury occurred after he had completed his last job.  (AR 34).

Plaintiff filed an application for DIB on August 28, 2015, alleging a disability onset date of February 1, 2014.  Plaintiff stated on his application that he filed for disability due to the following conditions: "degenerative disc disease – neck, neck arthritis, left shoulder pain, tingling in arm, loss of grip in left hand, back pain and trouble concentrating due to pain and lack of sleep."  (AR 53).  When asked at the Administrative hearing what prevents him from working, Plaintiff testified: "My shoulder, my neck, the medication that I take.  Mainly it was the pain in my shoulder and my neck, my arm."  (AR 34).

Plaintiff testified that he lives with his ex-wife and 3 children and that no one in the house is employed.  (AR 34).  He stated that they live off of his savings and bank account.  (Id.).  Plaintiff also testified that he does no housework and that his typical day

consists of sitting in a recliner or lying in bed and watching television.  (Id.).  In a medical report from April 2018, however, Plaintiff reported that he is able to "do sweeping, wash a few dishes, do light laundry, and do very light shopping at times, buying one or two items, or goes with help.  He states that he cannot vacuum and cannot mop or cook."  (AR 670).  The report also notes that Plaintiff "spends his days watering the lawn, doing light cleanup, such as dusting on good days, and on bad days, he just lays down and watches television and he currently does not have hobbies."  (Id.)  Plaintiff also reported to his physician in October 2017, that on the day he presented to the emergency room for suspected COPD (chronic obstructive pulmonary disease), October 8, 2017, that "he had worked until very late that day and was feeling abnormally exhausted."  (AR 675).

### III. PROCEEDINGS BELOW

#### A. Procedural History

Plaintiff protectively filed his application for DIB on August 31, 2015, alleging disability beginning February 1, 2014.  (AR 178-81).  Plaintiff's claims were denied initially on January 11, 2016 (AR 74), and upon reconsideration on August 8, 2016 (AR 90).  A hearing was held before ALJ Gail Reich on June 4, 2018.  (AR 29-52).  Plaintiff, represented by counsel, appeared and testified at the hearing.  Appearing and testifying by phone were medical expert Kweli J. Amusa and vocational expert Susan L. Creighton-Clavel.  (Id.)

On September 17, 2018, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act.[2]  (AR 15-24).  The ALJ's decision became the

---

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental

Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on July 26, 2019. (AR 1-5). Plaintiff then filed this action in District Court on September 6, 2019, challenging the ALJ's decision. [Docket "Dkt." No. 1].

On February 11, 2020, Defendant filed an Answer, as well as a copy of the Certified Administrative Record. [Dkt. Nos. 17, 18]. The parties filed a Joint Submission on June 4, 2020. [Dkt. No. 22]. The case is ready for decision.[3]

### B. Summary of ALJ Decision After Hearing

In the decision (AR 15-24), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[4] 20 C.F.R. § 404.1520(a). At **step one**, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since February 1, 2014, the alleged onset date. (AR 17). At **step two**, the ALJ found that Plaintiff had the following severe impairments: (a) degenerative disc disease cervical spine; and (b) osteoarthritis/ tendonitis left shoulder, with distant history of rotator cuff surgery. (AR 17). At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of

---

impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A).

[3] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. [Dkt. Nos. 13, 14].

[4] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (AR 18).

The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC")[5] to perform a reduced range of light work as defined in 20 C.F.R. § 404.1567(b)[6,] restricted by the following limitations:

> frequent pushing and pulling and gross handling and fingering with the left upper extremity – minor extremity (e.g., Ex. 16F/8); reaching overhead occasionally bilaterally; no climbing ladders, ropes, or scaffolds; other postural activities occasionally; no work at unprotected heights.

(AR 18).

At **step four**, the ALJ found that Plaintiff is unable to perform any past relevant work, as had actually been performed. (AR 21). At **step five**, considering Plaintiff's age, education, work experience and RFC, the ALJ found that Plaintiff "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." (AR 22). The ALJ accepted

---

[5] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[6] "Light work" is defined as
> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); see also Rendon G. v. Berryhill, 2019 WL 2006688, at *3 n.6 (C.D. Cal. May 7, 2019).

1  the vocational expert's testimony that Plaintiff would be able to perform the
2  representative occupations of: data entry clerk (DOT 209.387-022); vocational teacher
3  (DOT 094.227-026); and technical and scientific editor, classifying it as sedentary and
4  skilled (DOT 132.017-018).  (AR 22-23).  Accordingly, the ALJ determined that Plaintiff
5  had not been under a disability, as defined in the Social Security Act, from February 1,
6  2014 through September 17, 2018, the date of the ALJ's decision.  (AR 24).

IV.   **ANALYSIS**

    A. **Issue on Appeal**

Plaintiff raises one issue for review: whether the ALJ has improperly rejected his testimony regarding pain and functional limitation.  [Dkt. No. 22 (Joint Submission), 3].

    B. **Standard of Review**

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g).  The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence.  Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).  A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied.  Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001).  An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless, that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citation omitted); Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

### C. Whether the ALJ Properly Evaluated Plaintiff's Testimony

Plaintiff asserts that the ALJ did not properly evaluate his testimony regarding his symptoms and limitations. Defendant, on the other hand, contends the ALJ properly evaluated Plaintiff's subjective statements, finding them inconsistent with the record.

1.  Legal Standard for Evaluating Claimant's Testimony

A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Once the claimant meets that burden, medical findings are not required to support the alleged severity of pain. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to support the severity of his pain") (citation omitted)). Defendant does not contest, and thus appears to concede, that Plaintiff carried his burden of producing objective medical evidence of his impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms.

Once a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton, 331 F.3d at 1040. To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ "may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 489 ("we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination"); Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017).

The ALJ may consider at least the following factors when weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 948, 958-59 (9th Cir. 2002) (citing Light, 119 F.3d at 792). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Id. at 959 (citing Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999)).

### 2. The ALJ provided Clear and Convincing Reasons Supported by Substantial Evidence

Having carefully reviewed the record, the Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.[7] The ALJ found that Plaintiff's subjective complaints were not entirely consistent with the medical evidence of record, Plaintiff's own statements of daily activities in the medical records and Plaintiff's limited treatment, as well as Plaintiff's reported relief from the treatment. (AR 19-20). Plaintiff, however, contends that the ALJ only gave two improper reasons for rejecting his testimony: daily activities and sparse treatment. Plaintiff argues that neither reason constitutes a clear and convincing reason to dismiss his testimony.

Important to note, the ALJ did not "dismiss" Plaintiff's testimony concerning his pain, symptoms, and level of limitation. Rather, the ALJ stated that he had considered

---

[7] The ALJ did not make a finding of malingering in her opinion. (AR 15-26).

Plaintiff's testimony in limiting his work at the less than light exertional level, which was less than had been assessed by some of the State agency medical examiners. (AR 19-20). Accordingly, the ALJ reduced Plaintiff's RFC of light work to "frequent pushing and pulling and gross handling and fingering with the left upper extremity", "reaching overhead occasionally bilaterally", "no climbing ladders, ropes, or scaffolds", "other postural activities occasionally", and "no work at unprotected heights." (AR 18).

The ALJ performed a thorough review of Plaintiff's medical record and found that it did not fully support Plaintiff's allegations of disabling conditions. The ALJ reviewed and cited to Plaintiff's medical records of his torn rotator cuff and surgery, neck and spine issues, including MRI reports, and found that the records did not demonstrate that Plaintiff would be unable to perform a range of light exertion, with the express limitations. (AR 19-20). See Chaudhry v. Astrue, 688 F.3d 661, 672 (9th Cir 2012) (the ALJ's determination should not be second-guessed where reasonable and supported by substantial evidence).

The ALJ properly considered how consistent Plaintiff's subjective symptom statements were with this objective medical evidence. 20 C.F.R. § 404.1529(c)(2). This could not be the ALJ's sole reason for rejecting Plaintiff's statements about his symptoms, but it was a factor that the ALJ was permitted to consider. Id.; see also Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (while a claimant's subjective statements about symptomology "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a

relevant factor"). Thus, the lack of consistency between Plaintiff's medical records and his testimony was a proper basis for the ALJ's discounting Plaintiff's testimony.

Plaintiff contends that the ALJ improperly pointed to his level of daily activity as a basis for dismissing his testimony. This is not correct. The ALJ cited to Plaintiff's statements in the record of his daily activities to show the inconsistency with his testimony at the Administrative hearing:

> While the claimant testified that he spends his days sitting or reclining and only drives to attend doctor appointments (due to being under medication at other times), other evidence suggests that he has a greater activity level. As late as April 2018, the claimant reported that he is able to do sweeping, wash some dishes, do light laundry, very light shopping, and care for his personal needs. [AR 670]. He does not use an assistive device for ambulation (testimony). While the evidence is not sufficient to charge the claimant with post-alleged onset date substantial gainful activity, an October 2017 medical report reflects the claimant's statement that he worked until very late and was feeling abnormally exhausted. [AR 675]. These entries suggest that activities are not as limited as related in testimony and, to some extent, in his response on SSA forms. *Inconsistencies, even if inadvertent, render subjective statements not a reliable source for assessing disability.*

(AR 19) (emphasis added); see Thomas, 278 F.3d at 958-59 (holding that an ALJ may consider inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct when weighing the claimant's credibility).

An ALJ is permitted to consider daily living activities in his credibility analysis. See 20 C.F.R. § 404.1529(c)(3) (daily activities are a relevant factor which will be considered in evaluating symptoms); see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors"). Daily activities may be considered to show that Plaintiff exaggerated her symptoms. See Valentine v. Astrue, 574 F.3d 685,

694 (9th Cir. 2009) (ALJ properly recognized that daily activities "did not suggest [claimant] could return to his old job" but "did suggest that [claimant's] later claims about the severity of his limitations were exaggerated."). Although Plaintiff takes issue with this, it was proper for the ALJ to have considered daily living activities in his credibility analysis. See Burch, 400 F.3d at 681.

The ALJ also found that since the alleged onset date, the evidence shows only a "modicum of treatment – and only medications and physical therapy" and that although some records report sub-optimal or minimal relief of pain with medications, "far more frequently, they relate significant relief, commonly 70% or greater." (AR 19). Plaintiff says this reason is invalid as the medical records clearly note his continued complaints and treatment.

An ALJ may properly consider Plaintiff's treatment history in analyzing his asserted symptoms. 20 C.F.R. § 404.1529(c)(3)(iv),(v),(vi) (factors relevant to a claimant's symptoms, such as pain, which the Commissioner will consider include medication taken to alleviate symptoms; treatment received for pain; and measures used to relieve pain); see also Burch, 400 F.3d at 681 (holding that "ALJ is permitted to consider lack of treatment in his credibility determination"); Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (claimant's allegations of disabling pain can be discredited by evidence of infrequent medical treatment or by the minimal use of pain medication). Indeed, it was proper for the ALJ to have considered Plaintiff's improvement with treatment as a basis for discounting Plaintiff's testimony. See Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Plaintiff's taking of pain medication and some physical therapy also does

not render erroneous the ALJ's noting that Plaintiff's treatment was sparse.  See Jones v. Comm'r of Soc. Sec., 2014 WL 228590, *7-10 (E.D. Cal. Jan. 21, 2014) (ALJ properly found Plaintiff's treatment conservative, which included physical therapy, both anti-inflammatory and narcotic medications, use of a TENS unit, occasional epidural steroid injections, and massage therapy, diminished her credibility); Higinio v. Colvin, 2014 WL 47935, *5 (C.D. Cal. Jan. 7, 2014) (holding that, despite the fact that the claimant had been prescribed narcotic medication at various times, the claimant's treatment as a whole was conservative); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (finding that proof of "conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (finding that an ALJ can rely on a physician's failure " to prescribe… any serious medical treatment for [a claimant's] supposedly excruciating pain").

Based on these clear, convincing and specific reasons for partially rejecting Plaintiff's pain and limitations testimony and the substantial evidence to support her determination, the Court concludes that the ALJ did not commit error in discounting Plaintiff's testimony.

## V. CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED, and the action is DISMISSED with prejudice. Judgment shall be entered accordingly.

DATE: October 30, 2020

                     /s/ Autumn D. Spaeth
                     THE HONORABLE AUTUMN D. SPAETH
                     United States Magistrate Judge